### JOSE COLOMER *v.* MORGAN & VALETTE.

The registry of a Sheriff's deed in the book of mortgages, does not convey the information required by the statute ; unless recorded in the book of conveyances, the property is liable to seizure.

APPEAL from the District Court of the Parish of St. Tammany, *Watterston*, J. *Jesse R. Jones*, for plaintiff.  *A. Hennen*, for defendant and appellant.

MERRICK, C. J.  The present action was commenced by an injunction to prevent *Morgan*, the Sheriff, from turning the plaintiff out of the possession of certain lots of ground and buildings in the town of Mandeville, in the parish of St. Tammany.

The defendant, *Valette*, answered by setting up title to the property in himself and praying to be decreed to be the owner and put in possession.  The case was tried before a jury and a verdict was rendered in favor of the plaintiff.

The defendant insists that the action is a petitory action, and that the titles are before the court, and that it must pass upon the question of title.  If so, his own position is that of the plaintiff in the petitory action, for the proof shows that *Kuzac*, through whom both parties claim, was in possession of the property up to the time of the Sheriff's sale to plaintiff, and since that time the plaintiff has been in public possession of the property.  The injunction was sued out to prevent a disturbance of that possession.  The defendants title must, therefore, be examined in order to ascertain whether it be good, and, in all things, superior to plaintiffs. The defendant claims through a Sheriff's sale in a suit against *Weymouth*, and by *Weymouth* through *Kuzac*.  The plaintiff claims as a purchaser at a Sheriff's sale in the suit of *Tio*, assignee of *J. F. Bercia & Co.* v. *Kuzac and Wife*.

The sale from *Kuzac* to *Weymouth* was simulated, and *Kuzac* remained in possession.  The simulated act of sale was executed in July, 1852, and duly recorded. *Weymouth* confessed judgment in favor of *Valette*, and under an execution (which appears to have been lost) issued on the judgment, the premises in controversy were sold at Sheriff's sale and bought by the defendant, August 6, 1853.  This sale was recorded in the *mortgage* record on the 27th day of August, 1853.  In November, of that year, *Tio* obtained his judgment against *Kuzac and wife*.  He issued his execution on the 6th day of January, 1854, and the *next day* the Sheriff seized the property as the property of the defendants.  *Kuzac and wife*, on the third day of March, 1853, enjoined the sale of the property.  The injunction was finally dissolved on the 10th day of June, 1854, and on the fifth day of July, 1854,

for the first time, the defendants' title was recorded in the register of *conveyances*, it being nearly six months after the seizure under *Tio's* execution. On the fifth day of August, 1854, the property was adjudicated at the Sheriff's sale to the plaintiff, a third person, purchasing in good faith.

The defendant *Valette*, on the 23d day of January, 1854, *after Tio's seizure*, instituted an action against *Kuzac and wife*, to obtain the possession of the property, and recovered $200 yearly rent. This suit was decided in favor of *Valette* in November, 1854, and the second writ of possession issued thereon against *Kusac and wife*, was enjoined by the commencement of the present proceeding, the first writ having produced no visible effect, although the Sheriff, in his return, says he delivered the keys to an agent of *Valette*.

The counsel for *Valette* asserts, that the title of his client is formal, and that the Sheriff's sale was duly recorded. On examining the same, however, we find it was not recorded in the book of conveyances until after *Tio* had caused the property to be seized under his execution. The registry made in the book of mortgages at the instance of the Sheriff, does not convey the information required by the statute, and the subsequent registry in the proper book could not defeat *Tio's* previous seizure. 2 Rob. 379, *Tulane* v. *Levison;* 2 An. 787, *Robertson* v. *Brown*, 5 An. 154.

This view of the case renders it unnessary to examine the question whether *Valette* had notice of the defects in *Weymouth's* title or not.

We have not considered the proceedings in the suit of *Valette* against *Weymouth*, nor the delivery of the keys in January, 1855, under the judgment against *Kuzac*, as having any material bearing on the case. *Kusac and wife* were in possession when *Tio* caused the property to be sold, and the proof shows that the plaintiff has been in possession ever since, except possibly a momentary interruption when the Sheriff handed the keys to an agent of *Valette*, in January, 1855, after the plaintiff's purchase.

The Testimony of witnesses to show the declarations of *Kuzac* and *Weymouth*, as well as their letters, were clearly admissible under the issue of fraud and simulation made by plaintiff's verbal answer to the defendants' reconventional demand.

Judgment affirmed.